UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
                                                        :
ROSEMARY MAYSONET,                                      :
                                                        :
                            Plaintiff,                  :
                                                        :          **OPINION AND ORDER**
            - against -                                 :
                                                        :          10 Civ. 4616 (SAS)
CITI GROUP, INC.,                                       :
                                                        :
                                                        :
                            Defendant.                  :
------------------------------------------------------- X

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.   INTRODUCTION

Rosemary Maysonet brings suit against Citi Group, Inc. ("Citi

Group"), the corporate parent of her employer, Citibank ("Citi" or the "Bank"),

alleging employment discrimination in violation of the Age Discrimination in

Employment Act of 1967 ("ADEA")[1] and the Americans with Disabilities Act

("ADA").[2] On September 3, 2009, an arbitrator from the American Arbitration

Association ("AAA") dismissed Maysonet's ADA and ADEA claims.[3] Citigroup

---

[1]     *See* 29 U.S.C. §§ 621-634 (2011).

[2]     *See* 42 U.S.C. §§ 12112-12117 (2011).

[3]     *See* 9/3/09 AAA Arbitration Award ("Award"), Ex. D to the Affidavit
of Melissa Rodriguez, defendant's counsel ("Rodriguez Aff."), at 7.

now moves to dismiss Maysonet's discrimination claims based on the arbitration

Award.  For the reasons discussed below, Citi Group's motion to dismiss is

granted.

## II.    BACKGROUND

### A.    Facts[4]

On September 11, 2006, Citi hired 42-year-old[5] Rosemary Maysonet

as a teller in its Riverdale Avenue branch in Bronx, New York.[6]  Maysonet did not

sign an employment contract and was an "at will" employee.[7]  Maysonet's

supervisors at Citi provided her with a Handbook detailing her responsibilities,

which she read and understood.[8]

---

[4]      The facts are drawn from the Complaint, documents attached to the
Complaint, and the prior arbitration proceeding.  *See Roth v. Jennings*, 489 F.3d
499, 509 (2d Cir. 2007) ("Documents that are attached to the complaint or
incorporated in it by reference are deemed part of the pleading and may be
considered."); *Griffin v. Goldman, Sachs & Co.*, No. 08 Civ. 2992, 2008 WL
4386768, at *2 (S.D.N.Y. Sept. 23, 2008) ("[W]hen a motion to dismiss is
premised on the doctrine of collateral estoppel, a court is permitted to take judicial
notice of and consider the complaints and the record generated in both actions
without having to convert the motion to dismiss into a summary judgment
motion.") (quotation marks and citation omitted).

[5]      *See* Complaint ("Compl.") at 3.

[6]      *See* Award at 1.

[7]      *See id.* at 1-2.

[8]      *See id.*

2

From the outset, Maysonet's performance fell below Citi's standards. For example, on October 11, 2007, her supervisors issued her an informal Corrective Action Warning ("CAW") informing her that on twelve occasions since October 30, 2006, the cash in her teller drawer did not match the amount of the recorded transactions ("cash differences").[9] The CAW also reprimanded Maysonet for her repeated absences and warned her that she must improve to avoid termination.[10] On December 24, 2007, Maysonet received an unsatisfactory appraisal under the Mystery Shop Program, whereby a third party posing as a customer evaluates the branch and its employees based upon his or her experience.[11] On January 14, 2008, Citi issued a formal CAW to Maysonet advising her of her continued deficient performance and warning her of possible termination.[12] Despite this warning, Maysonet failed another Mystery Shop Program appraisal on February 11, 2008.[13] Finally, on April 21, 2008, citing continued absences and cash differences, Citi issued Maysonet a final warning. The branch manager, Mike Sulla, recommended termination to Maysonet's

---

[9] *See id.* at 2.

[10] *See id.*

[11] *See id.* at 2-3.

[12] *See id.* at 3.

[13] *See id.*

3

supervisor.[14]

On September 16, 2008, Maysonet debited and credited the same account with $9,540 instead of crediting the account of another customer as the transaction required.[15] Prior to Citi discovering this error, Maysonet suffered a broken wrist after falling in her apartment and took Short Term Disability ("STD") leave starting on October 25, 2008.[16] In November of 2008, the customer who had not received the expected deposit notified the branch.[17] Upon investigation, Citi determined that Maysonet was at fault, but did not terminate her immediately due to a bank policy prohibiting the termination of employees on STD leave.[18] Upon Maysonet's return to work on January 26, 2009, Citi terminated her employment due to the September 16, 2008 error.[19] Subsequently, Citi rescinded Maysonet's termination but warned her that if she returned to work, it would reinstate her

---

[14]     *See id.* at 4.

[15]     *See id.*

[16]     *See id.*

[17]     *See id.*

[18]     *See id.*

[19]     *See* Plaintiff's Arbitration Demand ("Demand"), Ex. C to Rodriguez Aff., at 3.

termination.[20]  Thus, Citi classified Maysonet as a bank employee on "inactive leave of absence."[21]

### B.      Procedural History

On February 9, 2009, Maysonet filed a demand for arbitration pursuant to Citi's Employment Arbitration Policy.[22]  Maysonet claimed that Citi terminated her based upon her age and disability and sought reinstatement to her prior position at her prior salary.[23]  Citi moved to dismiss Maysonet's claims on the grounds that they were premature because she was not currently terminated and, alternatively, that her claim lacked merit.[24]  The AAA arbitrator, analyzing the allegations as claims under the ADA and ADEA, found that Maysonet had not submitted any evidence giving rise to an inference of discrimination with regard to her termination.[25]  The arbitrator further reasoned that because Citi had reinstated

---

[20]      The record states only that Citi rescinded her termination "as a matter of business" but does not provide Citi's reason for doing so.  *See* Award at 5.

[21]      *Id.*

[22]      *See id.* at 1-3.

[23]      *See id.*

[24]      *See id.* at 5.

[25]      *See id.* at 6.

Maysonet, she had not suffered an adverse employment action.[26]  Accordingly, on September 3, 2009, the arbitrator ruled that Maysonet's claims were moot and granted Citi's motion to dismiss.[27]

After her termination, Maysonet filed complaints with numerous city, state and federal agencies, including the Equal Employment Opportunity Commission ("EEOC").[28]  On April 21, 2010, the EEOC adopted the arbitrator's findings and informed Maysonet that it failed to find any violations under the ADA or ADEA.[29]  The EEOC notified Maysonet of her right to sue.[30]  On June 14, 2010, proceeding pro se, Maysonet filed this action against Citi Group.[31]  Citi Group now moves to dismiss on grounds of res judicata and collateral estoppel.[32]

## III.   LEGAL STANDARDS

---

[26]   *See id.* at 6-7.

[27]   *See id.* at 7.

[28]   *See generally* Plaintiff's Papers Submitted with Complaint ("Pl. Papers").

[29]   *See* 4/21/10 EEOC Dismissal and Notice of Rights Letter ("EEOC Letter"), Attached to Pl. Papers, at 3-4.

[30]   *See id.*

[31]   *See* Compl.

[32]   *See* Defendant's Memorandum of Law in Support of Its Motion to Dismiss the Compl. ("Def. Mem.") at 3-8.

### A.     Motion to Dismiss

On a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "accept as true all of the factual allegations contained in the complaint"[33] and "draw all reasonable inferences in plaintiff's favor."[34]  On the other hand, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[35]  To survive a motion to dismiss, therefore, the allegations in the complaint must meet a standard of "plausibility."[36]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[37]  Plausibility "is not akin to a probability requirement," rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[38]  In order to survive a motion to dismiss employment discrimination claims, a plaintiff need not establish a prima facie

---

[33]     *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007) (quotation marks and citation omitted).

[34]     *Ofori-Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006).

[35]     *Ashcroft v. Iqbal*, — U.S. — , 129 S. Ct. 1937, 1949 (2009).

[36]     *Twombly*, 550 U.S. at 564.

[37]     *Iqbal*, 129 S. Ct. at 1949 (quotation marks and citation omitted).

[38]     *Id.* (quotation marks omitted).

7

case.[39]  However, a plaintiff's claims "must be facially plausible and must give fair

notice to the defendants of the basis for the claim."[40]

When deciding a motion to dismiss under Rule 12(b)(6), a court is

normally required to consider only the allegations on the face of the complaint.[41]

However, "[d]ocuments that are attached to the [complaint] or incorporated in it by

reference are deemed part of the pleading and may be considered."[42]  Thus, a court

is allowed to consider documents outside the complaint only if the documents are

integral to the pleading or subject to judicial notice.[43]

## B.    Res Judicata

Res judicata, or claim preclusion, is the long-accepted principle that

"'a final judgment on the merits of an action precludes the parties or their privies

from relitigating issues that were or could have been raised in that action.'"[44]  Res

---

[39]      *Barbosa v. Continuum Health Partners, Inc.*, 716 F. Supp. 2d. 210, 215 (S.D.N.Y. 2010).

[40]      *Id.*

[41]      *See Roth*, 489 F.3d at 509.

[42]      *Id.*

[43]      *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006).

[44]      *San Remo Hotel, L.P. v. San Francisco*, 545 U.S. 323, 336 n.16 (2005) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).

8

judicata will apply "if the earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action."[45] Two claims are considered to be the same cause of action if they each arise from a common nucleus of operative fact.[46] A party may properly raise the defense of res judicata in a motion to dismiss pursuant to Rule 12(b)(6).[47] Furthermore, the principle of res judicata applies equally when the prior adjudication is an arbitration, to which a plaintiff voluntarily submitted similar claims.[48] However, the dismissal of an action based upon mootness is a jurisdictional decision[49] — rather than a decision on the merits — and should not be given preclusive effect.[50]

---

[45]    *Esquire Trade & Fin., Inc. v. CBQ, Inc.*, 562 F.3d 516, 520 (2d Cir. 2009).

[46]    *See Jordan v. Metropolitan Life Ins. Co.*, No. 03 Civ. 4110, 2004 WL 1752822, at *3 (S.D.N.Y. Aug. 4, 2004).

[47]    *See Thompson v. County of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994).

[48]    *See, e.g.*, *Jordan*, 2004 WL 1752822, at *3-4 (holding that plaintiff who voluntarily submitted state law claims to arbitration was barred from bringing subsequent Title VII claim in federal court where all claims arose from the same nucleus of operative fact); *see also* Restatement (Second) of Judgments § 84, cmt. b (1982).

[49]    *See Fox v. Board of Trustees of the State Univ. of New York*, 42 F.3d 135, 140 (2d Cir. 1994).

[50]    *See Rosendale v. Brusie*, 374 F. App'x 195, 197 (2d Cir. 2010) (holding that the discussion of the merits of plaintiff's claims in a prior case had no

9

### C.    Collateral Estoppel

Collateral estoppel, or issue preclusion, precludes re-litigation of an issue where "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."[51] "The burden of showing that an issue raised in a subsequent proceeding is identical to one that was raised and necessarily decided in the prior action rests squarely on the party moving for preclusion."[52] Finally, collateral estoppel is equally applicable when federal statutory claims have been submitted to arbitration.[53]

### D.    Age Discrimination in Employment Act

---

res judicata effect on subsequent proceeding because prior case was dismissed on ripeness grounds); *Hell's Kitchen Neighborhood Ass'n v. Bloomberg*, No. 05 Civ. 4806, 2007 WL 3254393 (S.D.N.Y. Nov. 1, 2007) (holding that prior state court ruling that claims were moot did not bar subsequent action in federal court); *Payne v. Panama Canal Co.*, 607 F.2d 155, 158 (5th Cir. 1979) ("The dismissal without prejudice of the prior action on grounds of mootness does not serve as a final adjudication on the merits so as to bar this action.").

[51]    *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 146 (2d Cir. 2005) (quotation marks and citation omitted).

[52]    *Cobb v. Pozzi*, 363 F.3d 89, 113 (2d Cir. 2004) (quotation marks and citation omitted).

[53]    *See Benjamin v. Traffic Executive Ass'n Eastern R.Rs.*, 869 F.2d 107, 110-14 (2d Cir. 1988).

10

"Claims under the ADEA are governed by the three-step burdenshifting framework set forth in *McDonnell Douglas Corp. v. Green* . . . ."[54] Under this framework, a plaintiff must first establish a prima facie case of age discrimination.[55] "If the plaintiff succeeds in establishing a prima facie case of age discrimination, then the burden shifts to the [employer] to articulate a nondiscriminatory reason for the [adverse employment action]."[56] Finally, if the employer articulates a non-discriminatory reason for the challenged action, the burden shifts back to the plaintiff to demonstrate that the employer's explanation was pretextual.[57] However, a plaintiff is not required to satisfy the entire *McDonnell Douglas* framework at the pleading stage.[58] Rather, the court "considers the elements of a prima facie case in determining whether there is sufficient factual matter in the Complaint which, if true, give Defendant[s] fair

---

[54]    *D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 194-95 (2d Cir. 2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

[55]    *See id.* at 195.

[56]    *Id.*

[57]    *See id.*

[58]    *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) ("The prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement."); *Braphman-Bines v. New York City Police Dept.*, No. 03 Civ. 10207, 2005 WL 22843, at *3 (S.D.N.Y. Jan. 3, 2005) ("Whether [Plaintiff] has, or ultimately can, fulfill the requirements of the *McDonnell Douglas* test, however, is not the proper inquiry at [the pleading] stage in the litigation.").

11

notice of Plaintiff[s'] employment discrimination claims and the grounds on which such claims rest."[59]

To establish a prima facie case of age discrimination, a plaintiff must show: (1) she is a member of the protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances surrounding the adverse action give rise to an inference of age discrimination.[60] To be a member of the protected class, an employee must be at least forty years of age.[61] For a plaintiff to establish the second requirement, she must make some allegations demonstrating satisfactory job performance at the time of discharge.[62] With respect to the fourth requirement, an employee's direct replacement by a significantly younger individual,[63] or allegations that an employer made

---

[59]    *Holmes v. Air Lines Pilots Ass'n, Int'l*, – F. Supp. 2d – , No. 08 Civ. 5232, 2010 WL 4025594, at *12 (E.D.N.Y. Oct. 12, 2010) (quotation marks and citations omitted).

[60]    *See Leibowitz v. Cornell University*, 584 F.3d 487, 498 (2d Cir. 2009).

[61]    *See* 29 U.S.C. § 631(a) (2011).

[62]    *See Dugan v. Martin Marietta Aerospace*, 760 F.2d 397, 400 (2d Cir. 1985) (holding that plaintiff failed to state a claim where complaint demonstrated unsatisfactory job performance).

[63]    *See D'Cunha*, 479 F.3d at 195.

disparaging comments about an employee's age,[64] give rise to an inference of age discrimination. Conversely, the fact that a plaintiff was within the protected class both when hired and when terminated suggests a non-discriminatory motive.[65]

### E.    Americans with Disabilities Act

The ADA prohibits discrimination against a "qualified" individual on the basis of disability.[66] An individual is qualified if, with or without reasonable accommodation, she "can perform the essential functions of the employment position that such individual holds or desires."[67] The ADA defines disability as either "a physical or mental impairment that substantially limits one or more major life activities," "a record of such impairment," or "being regarded as having such an impairment."[68] To state a sufficient claim of discrimination under the ADA, a plaintiff must show: (1) her employer is subject to the ADA; (2) she has a

---

[64]    *See, e.g., Legeno v. Corcoran Group*, 308 F. App'x 495 (2d Cir. 2009) (finding allegations by a pro se plaintiff that interviewer "repeatedly intimated that [she] was too old for the position" was sufficient to withstand a motion to dismiss).

[65]    *See Liburd v. Bronx Lebanon Hosp. Ctr.*, No. 07 Civ. 11316, 2008 WL 3861352, at *6 (S.D.N.Y. Aug. 19, 2008) (stating that plaintiff's age discrimination allegations are "belied" by the fact that she was hired at the age of forty-seven); *Whyte v. Contemporary Guidance Servs., Inc.*, No. 03 Civ. 5544, 2004 WL 1497560, at *3 (S.D.N.Y. July 2, 2004).

[66]    42 U.S.C. § 12112(a).

[67]    *Id.* § 12111(8).

[68]    *Id.* § 12102.

disability within the meaning of the ADA; (3) she was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) she suffered an adverse employment action because of her disability.[69]

### F.   Plaintiff's Pro Se Status

A pro se plaintiff is entitled to have her pleadings held to "less stringent standards than formal pleadings drafted by lawyers."[70]   Accordingly, a pro se plaintiff's complaint and supporting papers should be construed "to raise the strongest arguments that they suggest."[71]   At the same time, a pro se plaintiff "must be bound by the same rules of law . . . as those represented by counsel"[72] and "the duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it."[73]

---

[69]   *See Shannon v. New York City Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003).

[70]   *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[71]   *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006).  *Accord Boguslavsky v. Kaplan*, 159 F.3d 715, 719 (2d Cir. 1998) ("[C]ourts may look to submissions beyond complaint to determine what claims are presented by an uncounseled party.").

[72]   *Carlin v. Gold Hawk Joint Venture*, 778 F. Supp. 686, 693 (S.D.N.Y. 1991).

[73]   *Nyack Hosp. v. Moran*, No. 08 Civ. 11112, 2010 WL 4118355, at *2 (S.D.N.Y. June 1, 2010).

### G.      Amendments to Pleadings

"Rule 15(a) provides that, other than amendments as a matter of course, a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."[74]  "[W]hether to permit a plaintiff to amend its pleadings is a matter committed to the Court's sound discretion."[75]  However, the Supreme Court has explained that

> [i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be "freely given."[76]

Accordingly, "'[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead.'"[77]

_____

[74]     *Slayton v. American Express Co.*, 460 F.3d 215, 226 n.10 (2d Cir. 2006) (quotation marks and citation omitted).

[75]     *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (quotation marks and citation omitted).

[76]     *Foman v. Davis*, 371 U.S. 178, 182 (1962).  *Accord Jin v. Metropolitan Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002).

[77]     *Vacold LLC v. Cerami*, No. 00 Civ. 4024, 2002 WL 193157, at *6 (S.D.N.Y. Feb. 6, 2002) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d

## IV.   DISCUSSION

### A.   Res Judicata

Citi Group contends that the arbitration Award constituted a final determination on the merits because the arbitrator found no evidence giving rise to an inference of discrimination.[78]  Although the arbitrator noted a lack of evidence, he did not base his dismissal on this ground.  Rather, the arbitrator dismissed Maysonet's claim as moot due to the fact that Citi had "re-hired" Maysonet as an employee on "inactive leave of absence."[79]  The arbitrator's decision was jurisdictional in nature rather than a final determination on the merits. Accordingly, the doctrine of res judicata does not preclude Maysonet's claim.

### B.   Collateral Estoppel

Citi Group also argues that Maysonet's claims are barred by the doctrine of collateral estoppel.[80]  In particular, Citi Group contends that the "resolution of whether Plaintiff was terminated on the basis of her age or alleged

---

42, 48 (2d Cir. 1991)).  *Accord Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) ("When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint.").

[78]     *See* Def. Mem. at 4.

[79]     Award at 6-7.

[80]     *See* Def. Mem. at 7.

disability was necessary to support a valid and final decision on the merits — it supported the Arbitrator's grant of Citibank's Motion to Dismiss."[81]  Citi Group, however, offers no factual or precedential support for this assertion.

Although the arbitrator found that Maysonet's claims "would be without merit" due to insufficient allegations and evidence,[82] this determination was not necessary to the arbitrator's final judgment dismissing her claims as moot. In other words, the arbitrator's mootness determination in no way required a finding that Maysonet's claim lacked merit.  For this reason, Citi Group has failed to carry its burden of showing that the issue it seeks to preclude was "necessarily decided"[83] in the prior proceeding.  Accordingly, the issue of whether Maysonet's termination was discriminatory under the ADA or ADEA is not precluded.

## C.    Failure to State a Claim

### 1.    ADEA Claim

Maysonet fails to allege any non-conclusory facts that show that the circumstances surrounding her termination give rise to an inference of discrimination.  In support of her ADEA claim, Maysonet asserts that she believes

---

[81]    *Id.*

[82]    *See* Award at 6.

[83]    *Cobb*, 363 F.3d at 114 (quotation marks and citation omitted).

17

"[her] age had a lot to do with [the termination]."[84]  The only non-conclusory fact

she offers is that she is in her mid-forties and that Citi hires many employees who

are in their twenties.[85]  She does not allege that Citi specifically replaced her with

someone significantly younger or that her supervisors made any disparaging

remarks about her age.  Even construed liberally, the fact that Citi hires many

employees in their twenties does not give rise to an inference that Citi

discriminated against Maysonet based on her age.  Additionally, the fact that Citi

hired Maysonet at the age of forty-two makes any inference of age discrimination

doubtful.  In sum, Maysonet has not alleged anything to support a claim that Citi

acted with age-related discriminatory animus, as required to state a claim under the

ADEA.[86]

### 2.  ADA Claim

Maysonet offers no non-conclusory facts that support her claim that

---

[84]     Maysonet's Complaint to the U.S. Department of Labor ("Department of Labor Compl."), Attached to Pl. Papers, at 3.

[85]     *See id.*

[86]     The record does not reflect Citi's reasons for rescinding Maysonet's termination while nonetheless prohibiting her from returning to work at her prior salary.  However, even if Citi acted in bad faith to, for example, obtain a dismissal at arbitration while preserving Maysonet's de facto termination, it does not alter the analysis here.  This additional fact — like the facts provided by Maysonet — does not give rise to an inference that the termination was discriminatory.

she was terminated because of the injury she sustained in October 2008.  Maysonet

states in her Complaint that she suffered a broken wrist that required a thirteen-

week leave of absence and that, upon returning to work, her supervisor terminated

her.[87]  In her complaint to the Department of Labor, which she attached to her

Complaint, Maysonet was more particular, albeit equally conclusory: "I believe

that Citibank is using this supposed [September 16, 2008] transaction as an excuse

to terminate me because of my disability."[88]  In support of this conclusion,

Maysonet cites a single fact:  that she has been a teller at different banks since

1989 — and at Citi since 2006 — and was never fired for cause.[89]

        Accepting this factual assertion as true, as required on a motion to

dismiss, does not make Citi Group's liability any more plausible.  Even conceding

the doubtful inference that Maysonet was otherwise qualified for her position, she

does not allege any facts related to Citi's decision to terminate her employment in

January 2009.  The simple fact that past employers did not terminate Maysonet

does not support the inference that Citi terminated her because of her alleged

disability.  Thus, Maysonet fails to state a claim under the ADA.

---

[87]    *See* Complaint at 3.

[88]    Department of Labor Complaint, Attached to Pl. Papers, at 3.

[89]    *See id.*

**D.     Plaintiff's Pro Se Status**

Maysonet opposes Citi Group's motion to dismiss on the ground that she has "no legal degree or legal . . . knowledge" and, therefore, has not been able to adequately defend herself.[90]  This argument is unavailing.  Even when the Court construes Maysonet's Complaint and numerous attached papers liberally in order to give effect to the strongest conceivable arguments, the submissions do not state facts that give rise to the inference that Citi terminated her on the basis of either her age or disability.

**E.     Leave to Replead**

Leave to replead is typically granted unless amendment would be futile.  Here, Maysonet may be able to allege some new facts that give rise to an inference of discrimination including, for example, any conduct on the part of Citi that could be considered to have been motivated by an age or disability-related animus.  Because amendment to Maysonet's claims may not be futile, she may file an amended complaint within thirty (30) days of the date of this Order.  If Maysonet fails to do so, her Complaint will be dismissed with prejudice.

**V.     CONCLUSION**

For the foregoing reasons, defendant's motion is granted.  The Clerk

---

[90]     Plaintiff's Affirmation in Opposition to Motion at 1-2.

20

of the Court is directed to close this motion [docket # 6].

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            February 9, 2011

**-Appearances-**

**Plaintiff (pro se):**

Rosemary Maysonet
2861 Exterior Street, Apt. 6G
Bronx, New York 10463
(347) 589-1520

**For Defendant:**

Melissa Rodriguez, Esq.
Sam S. Shaulson, Esq.
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, New York 10178
(212) 309-6000